HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JOAN RILEY JAGER<br><br>         Plaintiff,<br><br>    v.<br><br>JO ANNE B. BARNHART, Commission of Social Security,<br><br>         Defendant. | Case No. C03-5147  RBL<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR ATTORNEY'S FEES |

INTRODUCTION

This matter is before the Court on Joan Jager's motion for attorney's fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. Dkt. #40. After hearing oral argument on the matter, the court finds and rules as follows:

BACKGROUND

Joan Jager is a 51-year-old woman and alleges she is disabled as a result of bipolar disorder, which has prevented her from performing any substantially gainful work activity since March 31, 1996. Brief of Plaintiff-Appellant at 6, *Jager v. Barnhart,* 2006 WL 1722548 (9th Cir. 2006) (No. 04-35776) ("Jager Brief"). Ms. Jager was originally hospitalized at St. Joseph's Hospital on March 3, 1986, and was released ten days later with a final diagnosis of bipolar affective disorder, acute manic type. ER 241. Her

physician, Dr. Ehly, who treated Ms. Jager until January 1997, wrote that Ms. Jager had described "six months of increased energy, sleeplessness, acceleration of her thought processes, confusion, poor concentration, and impending feelings of loss of control." ER 241.

After her release from the hospital, Ms. Jager babysat her nephew over the course of eight years, and during the summers, she babysat two additional nephews. ER 48-50. Her babysitting hours began at 10 A.M. and ended at 4 P.M., and Ms. Jager would make the boys lunch and pack snacks for them. ER 49. She would also take them to the park to play, and she only occasionally needed assistance in enforcing discipline. ER 49–52. During this time, Ms. Jager also undertook several projects painting and wallpapering rooms in her relatives' homes. ER 51–52. Ms. Jager stated that she could do this work for approximately four hours per day but that she would get worn down and it was boring. ER 52.

At her disability hearing, Ms. Jager testified that she had taught citizenship classes to immigrants for several years but that she taught at most twelve hours per week. ER 40–41. However, she later testified that she could teach for up to twenty hours per week during certain times of the year. ER 51. Ms. Jager testified that she had also been on medication for many years. ER 42. She graduated from the University of Washington with a degree in liberal arts in 1995. ER 43–44. Ms. Jager testified that the reason she was able to obtain a degree was because her academic schedule was flexible; she could work whenever she wanted. ER 44.

Several other witnesses testified at Ms. Jager's disability hearing as well. Ms. Jager's sister, Teresa Riley Williams, testified that Ms. Jager needs to make lists to remember things and that she would get stressed if she did not have lists. Ms. Williams also testified that she trusted Ms. Jager to supervise Ms. Williams' children and that Ms. Jager was capable of caring for them for six to eight hours a day. ER 183–85. Ms. Jager's husband testified that if she could work more, she would.

After Ms. Jager stopped seeing Dr. Ehly in 1997, she was treated by three different caregivers, each

of whom testified to her limitations. Lance Harris, Ph.D., found that she had only slight limitations in her activities of daily living; experienced only occasional deficiencies of concentration, persistence or pace; and had once or twice experienced an episode of deterioration or decompensation. ER 314. He found Ms. Jager only slightly to moderately limited in her ability to complete a normal workday and workweek. ER 316–17. Stephen Goldberg, Ph.D., completed a second review on February 19, 1998. He noted that between March 1986 and December 1990, Ms. Jager experienced no severe impairment that lasted for the required twelve months. ER 320. Finally, Bobbi Fletcher, ARNP, assessed Ms. Jager on June 28, 2002, and found that she had restrictions of daily living and social functioning; deficiencies in concentration, persistence or pace; and repeatedly experienced episodes of deterioration or decompensation in work or work-like settings.

The Administrative Law Judge (ALJ) denied Ms. Jager's application for benefits after applying the five-step evaluation process under 20 C.F.R. § 404.1520. At step one, he found that Ms. Jager had not engaged in substantial gainful activity during the period at issue, between March 31, 1986, and December 31, 1990. ER 17. He also found that while Ms. Jager did suffer from severe bipolar disorder for a brief period, she did not suffer from the disorder for the required twelve month period under step two. 20 C.F.R. §§ 404.1505; 404.1509; 404.1520(a)(4)(ii). He therefore found Ms. Jager not to be disabled.

The ALJ then proceeded to steps three, four and five, making alternative findings. He found at step three that Ms. Jager's mental impairment did not meet or equal the listed impairments and that she could maintain the residual functioning capacity to perform levels of all exertion. The ALJ also found that Ms. Jager met the requirements of step four, namely that she could not perform any of her past relevant work, although at step five, he found that Ms. Jager could still perform work prior to the date she was last insured and was therefore not disabled prior to that date. Once the ALJ made his findings, Commissioner Barnhart denied petitioner's claims for disability.

Ms. Jager appealed to the district court, and Magistrate Judge Strombom recommended affirming the Commissioner's denial of benefits. This Court approved Judge Strombom's Report and Recommendation, and Ms. Jager appealed to the Ninth Circuit Court of Appeals.

The Ninth Circuit held that the ALJ erred in 1) rejecting Dr. Ehly's testimony; 2) giving no weight to Nurse Fletcher's opinion; 3) discrediting Ms. Jager's subjective complaints of fatigue; and 4) discrediting the statements of Ms. Jager's husband and sister. *Jager v. Barnhart*, 2006 WL 1722548 (9th Cir. 2006). The Ninth Circuit remanded to the ALJ for proceedings to determine "whether, in light of the newly-credited evidence, Jager is disabled." *Id.* at *3.

Ms. Jager then brought this motion before the Court to recoup attorney's fees incurred at both the district court and appellate court level. The Court heard argument on December 11, 2006.

## DISCUSSION

Ms. Jager argues that because she was the prevailing party at the Ninth Circuit and because the government's position was not substantially justified, she is eligible for attorney's fees under the EAJA. The government argues that this Court lacks jurisdiction, and, in the alternative, if the Court does have jurisdiction, its position at all levels of the proceedings was substantially justified, and Ms. Jager is therefore not entitled to attorney's fees.

**1. The Court Has Jurisdiction Over Ms. Jager's Motion**

The EAJA provides in relevant part:

> Except as specifically provided by statute, *a court shall award* to a prevailing party, other than the United States, fees and other expenses, in addition to any costs . . . incurred by that party *in any civil action . . . including proceedings for judicial review* of agency action, brought by or against the United States *in any court having jurisdiction of that action*, unless the court finds that the position of the United States was substantially justified . . . .

28 U.S.C. §2142(d)(1) (emphasis added). Here, Ms. Jager asks for fees and costs incurred in this Court and at the Ninth Circuit. Because the prevailing party shall be awarded fees and costs in any court having

jurisdiction under the EAJA, and this Court has jurisdiction over the action, it has jurisdiction over Ms. Jager's motion for fees.

**2. The Government's Position was Substantially Justified**

In this case, the government's position was substantially justified, and Ms. Jager is not entitled to attorney's fees. A position is substantially justified if it meets "the traditional reasonableness standard – that is 'justified in substance or in the main,' or 'to a degree that could satisfy a reasonable person.'" *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002) (internal citations omitted). Additionally, "a position can be justified even though it is not correct . . . if it has a reasonable basis in law and fact." *Pierce v. Underwood*, 487 U.S. 552, 566 n.2 (1988). The substantial justification standard does not require justification to a high degree; a position is substantially justified if there is a "genuine dispute . . . or if reasonable people could differ as to the appropriateness of the contested action." *Id.* at 565. In other words, even though the Ninth Circuit ruled that the ALJ erred in discrediting Dr. Ehly and the laywitnesses' testimony, it does not automatically follow that the ALJ's ruling was not substantially justified.

In examining whether the government's position was substantially justified, the Court looks to both the underlying action (the government action that precipitated the litigation) and the government's litigation posture. *Rawlings v. Heckler*, 725 F.2d 1192, 1195 (9th Cir. 1984). In this case the Court looks to the ALJ's decision as well as the government's position throughout the litigation to determine whether the position of the United States was substantially justified.

Here, although the Ninth Circuit held that the ALJ was incorrect in his decision to discredit witnesses, this Court finds that the ALJ's overall decision did have a reasonable basis in law and fact, thus rendering it substantially justified. A person is not disabled if he or she is able to perform substantial gainful activity. 20 C.F.R. § 404.1505. Ms. Jager taught citizenship classes approximately twelve hours

per week, and she testified that her teaching system allowed her to teach up to twenty hours per week at times. ER 51. Her sister, Ms. Williams, testified that Ms. Jager watched Ms. Williams's children for up to six or eight hours per day. Ms. Jager cared for one child all year and cared for two other nephews during the summer months, making them lunch and taking them to the park to play. ER 48–49. She also undertook home improvement projects, including painting and wallpapering rooms. ER 51–52. Given the activities in which Ms. Jager was able to partake, it was not unreasonable for the ALJ to find that Ms. Jager was not disabled.

The government's litigation posture in the wake of Ms. Jager's multiple appeals was also substantially justified. Ms. Jager only obtained a somewhat successful judgment at the Ninth Circuit. The Court remanded for additional proceedings, saying, "This case does not . . . present the unusual situation where it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." Jager at *3. The government finds itself in the position of defending the ALJ's decision. In instances such as these, particularly where it is not clear that Ms. Jager is disabled, the government can hardly be asked, after litigating a successful outcome, to concede that the ALJ was wrong and that Ms. Jager should have been awarded benefits.

More importantly, the government's arguments defending the ALJ's decision are grounded in law and fact, thus making the overall posture substantially justified. *See Pierce*, 487 U.S. at 566 n.2. For example, when the government argued that the ALJ properly determined that Ms. Jager did not have a severe impairment at the time her insurance status expired, it based its arguments on the fact Dr. Ehly's notes only record six months of impairment, yet the requirement is that Ms. Jager present twelve continuous months of impairment. 20 C.F.R. § 404-1509; ER 241. The government also argued that the ALJ properly evaluated the medical evidence by summarizing it in detail and interpreting it. Government's Appellate Brief at 27. While the Ninth Circuit held that the ALJ was incorrect in both of these findings, the

ALJ did base these decisions in fact, finding Dr. Ehly's opinion to be speculative and equivocal given that Dr. Ehly himself noted that Ms. Jager managed funds, completed an undergraduate degree, cared for children, and undertook several major projects around her home.  Government's Appellate Brief at 28-29.

## CONCLUSION

In examining the totality of the circumstances, the government's position was substantially justified. Plaintiff's motion for fees, Dkt. #40, is therefore DENIED.

Dated this 16th day of January 2007.

/s/ Ronald B. Leighton
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE